Curia, pet JohwstoN, Ch.
This cause has been extensively argued both in the Court of Appeals in Equity and in this Court, and has received that deliberate consideration which its importance demands ; and if, any doubts remain in the mind of the Court, they relate to points not necessarily affecting the result of the case. The duty has been assigned me of stating the conclusions ,to which a majority of my brethren, in this court of ultimate resort, have come: and 1 enter upon it with unfeigned diffidence, as well on account of the difficulty of the questions, as the shortness of the time allowed for discussing them in the judgment I am about to deliver.
There are three great questions involved in this appeal; — in the argument of which, counsel have accumulated cases to such a degree that if the court should undertake to notice them all specifically in its judgment, the task would be overwhelming and oppressive, and would effectually exclude the other causes before us from that share of our consideration to which they are justly entitled. All that can be expected, is, that we should carefully attend to principles deducible from the cases quoted- — - occasionally glancing at such of the cases, themselves, as seem to be most prominent in their respective classes, and to indicate most clearly the doctrine to be gathered from the current of decisions. And let it be remembered that it is not from anomalous cases ; — cases pressed to an extreme on the one side or the other j — -or led, by particular circumstances, out of the general range ; — that the leading doctrines of law are to be learned. It is the broad current which carries the acknowledged principle.
The questions for our consideration are : 1, Whether the title ■of David F. Myers, who conveyed to Van Lew, was a good title *332 in fee. 2, If not, then, whether its defects are such as, upon general principles of equity, entitle Yan Lew to a recision. 3, If, upon general principles, he is entitled to this relief; then whether he is entitled to the relief he seeks against Mrs. Parr.
These three questions will be taken up in their order.
1. Had David F. Myers a good title in fee ? In the opinion of a majority of my brethren the case will eventually turn on the two remaining questions, and, therefore, we do not deem it necessary to conclude any thing on this point; although we have been pressed by both parties to determine it. The plaintiff who has purchased a title, one of whose links is a decree of the Court of Equity, insists, that if that link is defective and the chain broken, the same court which, as he conceives, imposed the grievance upon him, is bound to relieve him from it. On the other hand the defendants contend that consistency requires at the hand of the court that it should uphold its own decree, and declare the title good.
But it is a plain misapprehension to suppose that the court is at all responsible for the effect or operation of its decree : or that it is at liberty, upon any consideration whatever, to pronounce it either more or less effectual in law than it really is. The question is as to the legal validity of the title : and every link in the chain is to be decided upon as a court of law would determine: and when the question arises in a case proper for equity cognizance, and is necessary to be decided in the case, her courts are bound by the plainest principles and the inexorable obligations of duty, — let the consequences be what they may, — to adjudicate it according to law and the truth.
There are members of this court who believe the title good : and, perhaps, may express that opinion : — and if they do, it will be found that their reasons and the authorities upon which they rely are very strong. Certainly they are sufficient to produce doubts in our minds, and to restrain us from coming to an opposite conclusion. But while it would afford us the utmost pleasure if we could unhesitatingly declare that the decree of 1835 carried the fee to the purchaser; — we do not see enough to satisfy us that such declaration would be found true when the contingent remaindermen under David Myers’ will come to put it to the test.
This is, a question which we do not intend to discuss, because we would not unnecessarily disparage a title which may possibly *333 be found good. But we may be permitted to offer a very few observations to justify the doubts we entertain : and to shew why we cannot relinquish them.
The general rule is undoubted, that a decree or judgment binds none but the parties before the court and their privies : and, of course, where property is sold under such adjudication, the purchaser acquires nothing beyond their interests. The parties before the court in this instance were the life tenants under the will; but the contingent remaindermen, (according to the averments in the bill,) were not in esse, and, of course, were not parties. There are cases in which parties not before the court, and even not in esse, may be bound by its judgment: but those are cases, it seems to us, where there is a privity of estate between the actual parties and those excluded from the records in virtue of which the former, — being clothed, for the present time, with the interests of the latter, — may be held to represent them; — as in estates tail, and the like. But, in the case before us, there was no privity of estate whatever, between the life tenants and remaindermen. The latter were to take nothing from the former by inheritance ; but were to derive all their interests in the property immediately from the testator as purchasers.
These observations might be extended, and other views of the subject might be taken; but, as I have said, it is not our intention to discuss the point under consideration.
But if we could overcome our doubts and pronounce the title good, that would terminate this cause, without relieving the plaintiff from the grievance of which he complains. We could not make such an adjudication without committing the identical fault which, in his apprehension, vitiates the decree of 1835. If the contingent remaindermen are concluded by that decree, then his title is good, and he has no need of the relief he seeks. But if they are not concluded by that decree, on the ground that they were not parties to the suit, the same objection would apply in this case and would deprive our decision of judicial authority. He would be left in the same condition as before. It is necessary to his case, therefore, that the title under which he holds should be defective and invalid. For the purpose, therefore, of considering the remaining questions in the case, it will be assumed that his vendor held under a defective title. And this brings us to the next question in the case ; which is—
2. Whether, upon a supposition that his title is invalid, the plaintiff has a general equity to be relieved of his bargain ?
*334 This is a case of conveyance with warranty actually executed and accepted, and possession taken and retained by the purchaser, who ever has been, and still is, in the undisturbed and unquestioned enjoyment of the property bought by him: and the question is whether he is entitled to a recision of his bargain on the ground of danger apprehended from the defects of his title.
This is the question for the more authoritative decision of which this cause was removed into this court. The court has formed a conclusive opinion upon it; in which, my former doubts being removed by the argument, — I am enabled to concur.
It is believed that no precedent can be found, in any quarter to which we are accustomed to look for authority, where a party, in the full enjoyment of the property purchased by him, has been relieved, in equity, from an executed contract, untainted by fraud, or such mistake as amounts to fraud, in the equity sense of the word.
This is not a case of executory contract (many of which have been quoted to no purpose,) where the purchaser is in possession, under circumstances not amounting to a waiver of objections to the title; and where, if the vendor comes for a specific execution of the contract, the purchaser is entitled to an inquiry into the title before he accepts it.
It is needless to inquire what circumstances have been held to be evidence of a waiver of objections in such cases. Generally, if the possession is taken in pursuance of the contract, by the terms of which the inquiry into the title is nevertheless kept open, it is no waiver. So, again, if notwithstanding the possession the parties continue to treat of the title. The subject is discussed by Sir Thomas Plumer, in Burroughs vs. Oakley, (3 Swanst 168.)
But the material point is, that it has been repeatedly held that even where the contract is still executory, the purchaser may, by his acts, be deemed to have waived his right to object, and be compelled to accept such title as the vendor can make, without inquiry into its sufficiency. This is recognized in the case of Burroughs vs. Oakley already referred to. In Fleetwood vs. Green (15 Ves. 594,) where, upon an agreement to convey realty, stipulating that the purchaser should be let into immediate possession and pay the purchase money at the expiration of 12 months, he was let into possession accordingly and an abstract of title furnished him, to which he made no objection, *335 but retained the possession, treating the premises as his own, for Upwards of four years, without fully satisfying the interest accruing on the purchase money: a reference as to the title was refused, and a specific performance decreed against him. In Margravine of Anspach vs. Noel (1 Mad. R. 316) the circumstances were very similar. The purchaser was let into the possession, in pursuance of the terms of the contract, within a short time after its execution, and received an abstract of title within a month afterwards, to which he made no objection until about two years after it was delivered to him. In the meantime he made alterations in the premises and let them ; and had written a letter offering excuses for delaying payment of the purchase money. A specific execution of the contract was decreed, without inquiry into the title. The Vice Chancellor relies on the alterations and letting of the premises, and upon the defendant’s letter, as presumptive evidences of his approval of the title: and observes “ It is true, the defendant by his answer says he did not mean to waive his objections to the title : but if a party acts in a manner from which it may be implied he does not mean to object to the title, he cannot afterwards, at a distance of time, when evidence, perhaps, is lost, insist upon objections to the title. Objections to a title should be made with due diligence. Here there are many acts from which an implied consent to the title might be inferred : — the correspondence — the alterations — and the letting of the premises.”
These two uncontradicted cases, out of the many which have been quoted, may suffice for the principle. Grounding themselves upon these decisions, the counsel for the defendants pressed the inquiry, which was not answered in the argument, and, it seems to us, cannot be answered : — is not a purchaser as much bound to abide by a title, the conveyance of which he has actually accepted, as to put up with it when the conveyance is forced upon him on the mere presumption that he has waived objections and agreed to accept it? Is a party more bound by his agreement than his acts ? ,
It may be permitted us to ask upon what ground does the court, in the cases of executoryrcontracts, of which we have been speaking, compel the purchaser to take the vendor’s title ? Certainly upon no other than that he has agreed to take it. It was his bargain. And when the court compels him to perform it, and to accept the conveyance, whether the title be good or bad, is this done, to the intent that he is to depend upon the cove- *336 wants for which he stipulated, as his selected means of redress for any loss he may sustain : — or is it done, (as the principle of this bill imports,) with a secret reservation in the mind of the court, that the identical defects in the title, into which it will not even look, when it compels the purchaser to take it, may be immediately used by the purchaser as a ground to rescind the contract, to reverse the decree and to return the title ? As said by Chancellor Harper in Whitworth vs. Stuckey (1 Rich. Eq. 407) “ such an absurdity in the law can hardly be supposed, as that a party should be compelled, by the court, to execute a contract, when he might sustain his bill to rescind it, if it were already executed.”
Having seen what inferences should be drawn from the cases of executory contracts, let us now come immediately to those upon contracts executed.
The discussion might be rested on the case of Whitworth vs. Stuckey, just mentioned-to which nothing can be added on the scoie of reasoning, and very little on that of authority.
The case of Bumpus vs. Platner (1 Johns. Ch. 213.) The bill was for an injunction against proceedings to foreclose amort-gage. The premises had been purchased by the mortgagor who received a conveyance, and mortgaged the premises to secure the purchase money : and the ground of the bill was that there was a total- defect in the title, and a failure of consideration which entitled him to relief. He was still in the possession. There were allegations of fraud in the case, but they were not proved to the satisfaction of the court. Chancellor Kent observed, “ It is said to be very difficult to extract from the books what the rule of equity is upon this point of failure of consideration, after the agreement is executed ; (1 Fonbl. 363,) but I apprehend it may be safely said, that there is no case of relief on this ground, when possession has passed and continued, without any eviction at law, under a paramount title. Plainer conveyed to the plaintiffs with covenant of warranty, and he is bound to defend their title at law : and non constat that he is not able and willing to do it. There was a case under Lord Nottingham (2 Ch. Ca. 19, Anon.) in which the purchaser was relieved from the payment of the purchase money ; but he had already lost the land, by eviction, under a better title. If the title fails in this case, the plaintiffs can resort to the covenants in their deed for their indemnity. I consider an eviction at law an indispensable part of the plaintiffs’ claim to relief here, on *337 the mere ground of failure of consideration. The proof is that they have been in possession of the land ever since the purchase from Plainer, (and which was near 20 years ago,) under that title and no other. It would appear indeed that McDougal, under whom Platner claimed, had previously sold to one Weath-erwax, whose estate was afterwards forfeited to the people of this State. That may be the better title ; but it cannot be tried here upon this bill.” “ It would be without precedent, and dangerous in principle, to arrest and bar the recovery of the debt, while the purchaser is still in possession under the purchase deed, and there has been no eviction at law.”
In Abbot vs. Allen (2 Johns. Ch. 519) the same point was again brought under discussion, and the Chancellor re-examined the doctrine with an extensive reference to the authorities. He said “ If there be no fraud in the case, the purchaser must resort to his covenants, if he apprehends a failure or defect of title, and wishes relief before eviction. This is not the appropriate tribunal for the trial of titles to land. It would lead to the greatest inconvenience, and perhaps abuse, if a purchaser in the actual enjoyment of land, and when no third person asserts, or takes any measures to assert, a hostile claim,' can be permitted, on suggestipn of a defect or failure of title, and on the principle of quia timet, to stop the payment of the purchase money, and of all proceedings at law to recover it. Can this court proceed to try the validity of the outstanding claim, in the absence of the party in whom it is supposed to reside, or must he be brought into court against his will, to assert or renounce a title which he never asserted, and perhaps, never thought of? I apprehend there is no such practice or doctrine in this court: and that a previous eviction at law is, as a general rule, indispensable.” “ The case of fraud is an exception : and it seems to be admitted by Mr. Butler (note 332 to Co. Lit. 384, a,) that if the purchaser was imposed on, by any intentional misrepresentation or concealment, he may have redress here, in addition to and beyond his covenants.” “I know of no case in which this court has relieved the purchaser where there was no fraud ánd no eviction. All the cases I have looked into proceed on the ground of failure of title duly ascertained.” “ To sustain the injunction would be assuming the fact of a failure of title, before eviction, or trial at law : and which this court, as not possessing any direct jurisdiction over legal titles, is not bound or authorized to assume. This court may, perhaps, try title to land *338 when it arises incident ally: bnt it is understood not tobe within its province, when the case depends on a simple legal title, and is brought up directly by the bill. The power is only to be exercised in difficult and complicated eases, affording peculiar grounds for equitable relief.”
For the cases referred to by the Chancellor in support of his opinion, we refer to his decision, as reported.
No case of our own has been pointed out in which equity has ever undertaken to rescind an executed contract, while the purchaser was in the enjoyment of the premises, on the mere ground of defect of title. It is said that there are cases on our records where that court has refused to rescind under such circumstances ; but the research of the bar has not made them accessible to us. It is enough that no case exists among us in which a recis-ion has been decreed, under the circumstances stated.
Nor is it known that there is a precedent for such a decree in England. We have seen that it is opposed to principle and to the test of American authorities on the subject. It is but reasonable, then, to conclude that the practice and doctrine contended for by the plaintiff is unknown to equity jurisdiction, unless some clear precedent be produced to support them. The plaintiff’s counsel, feeling the force of this, has undertaken to produce two English cases, but neither of them sustains him.
The first is the case of Edwards vs. McLeay (Coop. Ch. R. 308 : S. C. upon appeal 2 Swanst. 287,) referred to by Chancellor Harper in Whitworth vs. Stuckey, and by Chancellor Kent in Abbot vs. Allen. The case was put upon the ground of fraud alleged and proved : and so it has ever been understood.
The case was that the vendors sold and conveyed to the ven-dee in fee simple a messuage, stables, coach-house, lands, (fee., at Clapham, representing themselves to have full power and authority to dispose of the fee simple and inheritance. Soon after the completion of the purchase, the vendee discovered that part of the fore-court, and of the driving-way, or road leading up to the house, together with the whole of the ground upon which the coach-house and stables stood, had been formerly part of Clap-ham common, and were many years before enclosed and taken from the common. The bill charged, and it was proved to the satisfaction of the court, that the vendors were aware of these circumstances, which the vendee could not have discovered from the abstract, and concealed it from him. Sir Wm. Grant said, fl It has never been laid down, that, on the subject of title, there *339 can be no such misrepresentation as will give the purchaser a right to claim relief to which the covenants do not extend.” “ Whether it would be fraud to offer as good a title which the vendor knows to be defective in point of law, it is not necessary to determine. But if he knows and conceals a fact material to the validity of the title, I'am not aware of any principle on which relief can be refused to the purchaser.” . “ The defendants object to the relief sought by the bill, that the plaintiff is premature in his application, inasmuch as he has not yet been evicted, and may never be evicted. But I apprehend that a court of equity has quite ground enough to act upon : and that it ought now to relieve the plaintiff from the consequences of the fraud practised upon him.” Upon the appeal, Lord Eldon affirmed the decree, and observed, “ The case resolves itself into this question ; whether the representation made to the plaintiff was not. in the sense in which we use the term, fraudulent 1 lam not apprised of any such decision ; but I agree with the Master of the Rolls, that if one party makes a representation which he knows to be false, but the falsehood of which the other party has no means of knowing, this court will rescind the contract.” This case needs no comment.
The other ease is that of Hitchcock vs. Giddings (4 Price R. 135; 2 Excheq. R. 55,) decided by L. C. B. Richards. The purchaser bought the interest of his vendor in a remainder in fee, expectant on an estate tail. At the time of the contract, the tenant in tail had actually suffered a recovery, of which both parties were ignorant till after the conveyance had been executed and an absolute bond given for the purchase money. The court rescinded the contract, on the ground of mistake, although there was no fraud from knowledge, or concealment of the fact, on the part of the vendor : — resting the decree on the equity that the vendor had no interest in the subject matter at the time of the sale.
This case has been much relied on in argument here, as proving, 1st. That mere failure of consideration is ground for a re-cision in equity, and 2dly. That the recision will be decreed before eviction. But such a construction perverts the plain principles of the case.
The case is put expressly by the judge and the counsel for the plaintiff in the cause, upon the ground of mistake, amounting in the equity sense of the term to fraud. The court admitted, that if the agreement had been for a mere contingency, it might not *340 be disposed to assist the plaintiff. But its interpretation of the contract was that the parties “agreed for the sale of the remainder, subject to the subsequent possible contingency of there being no recovery suffered.” The parties manifestly contemplated the fact that a contingency existed at the time of the contract: and were mutually mistaken in that fact, upon which the whole bargain rested. Then, as to the eviction: the objection is merely verbal. Eviction means the ousting of a party from the actual possession of property of which he is in the enjoyment: but this purchaser, from the very nature of his interest, never had, and never could have, the possession, and never could be evicted: and to require eviction, as the prerequisite of a recision in such a case, would be a palpable violation of the spirit of the rule.
Now, here are the cases which are supposed to disprove the generally received doctrine, that a party shall not be allowed to rescind a contract while in the actual enjoyment of its benefits, unless there has been a plain mistake in the case, or he has been deceived and defrauded. Audit may be safely asked, do they disprove it? Would it be wise or safe, upon such authority to break down a doctrine clearly recommended by justice, and more clearly by sound policy ? And what objection can be urged to the doctrine 1 Why should it be set aside ? It has never been denied that men should be allowed to make such lawful contracts as they please : and surely when they have contracted fairly and understanding!y, truth and integrity, justice and law require that they should abide by them. There is no dispensing powe,r in this court, nor in any other, to setaside the obligation offair andlawful contracts ; and as the purchaser, when he has received his title, can insist on it and hold it against the vendor, however unwilling the latter maybe; so he also should be compelled to abide by his own bargain.
Arguments were drawn by counsel from a very extensive and critical examination of the law decisions of this State, to shew that as the law courts, in certain cases, allow damages upon breach of the covenants of deeds conveying land, where there has been no previous eviction ; equity should rescind the contract when the remedy at law is incomplete. No less than seventeen cases at law were quoted ; and it is plainly impossible to analyze them here. Our brother O’Neall will give his exposition of them, and endeavor to shew, that there is nothing in their doctrines inconsistent with the rule in equity as announced by us. The law courts seem to have been struggling, for years, to *341 get clear of the early decisions allowing recoveries on the ground of failure of title without eviction : and they appear to have settled at last in this result: that in actions brought for the purchase money, the purchaser may make a clearly subsisting outstanding title the ground of abatement for the contract value of such part of the premises as it may cover. It has been proposed, as a just inference from this, that where, from the remoteness or contingency of the outstanding title, law cannot give damages, equity should interfere and rescind the contract. But apart from the incompetency of a court of equity to try the validity of the outstanding title, is it not obvious that the remoteness and contingency which render it inappreciable at law, must necessarily make it equally uncertain what degree of importance should be attached to it as a ground for recision in equity ? If the defect of title be such as authorizes a court of law to interfere ; be it so. That is one of the advantages of his covenants to which equity leaves the purchaser. But, if it be of such a nature that law declares him entitled to no relief in virtue of the security he has himself selected, as was the case in this instance, it seems a strained, inference that that declaration entitles him to relief elsewhere.
If the general doctrine, that a purchaser is entitled to relief on the score of failure of title, before eviction, has been found so pernicious at law, as to induce her courts to narrow it down to special instances, excluding such as the present, this proves that it should not be extended to equity by giving her cognizance of the repudiated cases. The plain truth is this ; there is no conflict of views between the courts ón this subject. When a party has a case for damages he resorts to law upon his covenants : and when ho has a case for recision, (which is a very different thing) and brings it in equity, he will be relieved.
There is but one more consideration under this head. It has been attempted to be shewn that unless there be fraud or mistake in this ease, this plaintiff is not entitled to maintain his bill. Then, is this a case of either fraud or mistake 1
The remark was made in the circuit decree that no charge of fraud is made in the bill. The charge, as observed by Chancellor Harper, in Whitworth vs. Stuckey, “ seems somewhat evasive.” It is a clear rule of pleading that he who charges fraud, should so set out the facts as that the fraud may be inferred from them. It is not said in the bill that the vendor concealed from the purchaser, or that he, the purchaser, was in fact *342 ignorant, that the will of David Myers, with the decree for the sale of the property, constituted the vendor’s title : and if he knew of these, “ it is immaterial that either or both of the parties put a wrong construction upon them: or if the vendor represented to the purchaser, in the strongest manner, that his title was good, only expressing his own opinion or conviction on the construction of the papers, this would be no fraud.” There was no proof whatever on the subject.
Then, as to mistake. None was alleged, and none proved. Was the plaintiff ignorant of the will and the decree? It is not so alleged; and from the facts appearing at the trial, it is not probable that he was. And if he was not, what other mistake could there be in the case except a mistaken conclusion as to the operation of the instruments 1 It is well settled that the means of knowledge are considered in law as amounting to knowledge. Parties must be diligent; and if they indolently neglect to look into and attend to their^own interests, it will require strong circumstances to entitle them to relief from the consequences of their negligence. No other rule can be safely substituted in law. It was Van Lew’s duty, as it was his interest, to look to his vendor’s title before he accepted it. Abstracts of title are not in use among us: but no prudent man takes a conveyance without satisfying himself that there is either an unbroken chain of title or equivalent statutory possession. He who looks to an abstract is bound, if he accepts a conveyance under it, to abide by all the defects apparent on the abstract: and the same must be the rule if he looks to the title deeds. It is true he is not bound by delects extrinsic to them : but the defect complained of in this case was in the chain of title itself, and not extrinsic.
3. The remaining question in this case relates to the relative equities of the plaintiff and the defendant, Mrs. Parr : and there is scarcely a division of opinion among us on this point.
When this defendant became the purchaser of the bonds, she was not merely ignorant of the existence of any equitable de-fence, but she had evidence of those circumstances which are usually regarded as waivers of objection. The plaintiff had taken a conveyance and was in possession; treating the property as his own, and even devastating it by clearing and culture. He had made considerable payments of the purchase money. When applied to through Mr. Caldwell, who, although not authorized at the time, had undertaken to represent him, he did not *343 disavow his agency, but affirmed it by conforming to his stipulations. Here was an opportunity for making known his equities, and Mrs. Parr had a right to infer the non-existence of equities from his silence. Then, he applied for and obtained further indulgence; — the effect of which is stated in Burroughs vs. Oakley and Bumpus vs. Platner. It may have been his misfortune not to know the defects of his title during all this time; but neither equity nor justice require that his misfortune should be transferred to one equally entitled to protection with himself. Add to all this; — he has the covenants of his deed to resort to ; — but the loss, if it should fail on Mrs. Parr, must be borne by her without redress.
It is ordered that the decree be affirmed and the appeal dismissed.
Harper and Dunkin, CC. and Wardi,aw and Frost, JJ. concurred.